## RICKNER v. HALLER.

[No. 18,447. Filed January 12, 1954. Rehearing denied February 5, 1954. Transfer denied April 1, 1954.]

370

*Leigh L. Hunt* and *James P. Murphy,* both of Fort Wayne, for appellant.

*Solly K. Frankenstein* and *Ora R. Kuhlman,* both of Fort Wayne, for appellee.

ACHOR, J.—This is a civil action for personal injuries brought by appellee against appellant, arising out of an automobile accident which occurred while appellee was riding as a guest in appellant's car. Trial to jury resulted in a verdict and judgment for $8,000.00.

The evidence in the case most favorable to appellee is that as appellant drove east, approaching Hesse Cassel Road, which is a preferential county highway, he saw a stop sign, which was 156 feet from the center of the intersection where the collision occurred. Appellant looked to the south before he passed the stop sign but did not look to the south again before entering the intersection. Appellant entered the intersection at a speed of between eight and twenty miles per hour without making any effort to stop, although he could have stopped had he wanted to do so. Appellant was conscious of the fact at the time he entered the intersection without stopping that he was violating the law, "but decided to go through regardless of the consequences." His vision was unobstructed for a distance of 350 feet to the south, and some part of an approaching vehicle could have been observed for 100 feet beyond that point. Appellant knew that the intersecting Hesse Cassel Road was used as an artery from the

Decatur Road (Route 27), to the eastern industries of Fort Wayne, and was used by the employees of these industries who came from the south, and had a considerable amount of traffic, especially before and after the shift period at the factories when this collision occurred. Mr. Clifton, the driver of the automobile with which appellant's automobile collided, blew his horn three times successively when he was from 200 to 300 feet south of the intersection but appellant wholly ignored the warning. As the parties approached the intersection, appellee was "sick" with nausea and had her head back. Appellant also testified that he did not hear the horn on Mr. Clifton's car, although he had his windows down, and that appellee did not warn appellant of its approach, although she was sitting on the right side of appellant's automobile.

The errors assigned as cause for new trial, and relied upon by appellant as grounds for reversal in this appeal, are as follows:

1. That the verdict of the jury was not sustained by sufficient evidence.

2. The giving of appellee's instructions 3, 5, 7 and 8.

3. Refusal by the court to give appellant's tendered instructions 6, 7, 9 and 12.

Essentially, the same question is raised by the first assigned error and the giving of appellee's instruction 3. Both are related to the measure of proof required to support an action for wanton or wilful misconduct within the guest statute. Appellee's instruction 3 is as follows:

"The Court instructs you that the defendant may be chargeable with wanton and wilful misconduct if he knew and was conscious of the fact that a stop sign was standing on the south side of the Paulding Road and west of the intersection of the Paulding and Hesse Cassel roads and he deliberately and

intentionally disregarded said stop sign and failed to stop the automobile which he was driving and deliberately and intentionally drove and operated said automobile into said intersection with knowledge of the likelihood of injury to the plaintiff although he did not see the other automobile involved in the collision approaching from the south on the Hesse Cassel Road."

We will therefore first consider proof necessary to establish an action for wanton and wilful misconduct under the guest statute. The guest statute, under which this action is brought is as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle." §47-1021, Burns' 1952 Replacement.

It is appellant's contention that, in order for appellee to recover, it was necessary that appellee not only prove that appellant wantonly or wilfully entered the intersection without stopping in violation of the law, but that she must also prove that appellant had knowledge of the immediate hazard to which his wanton or wilful misconduct subjected his guest—in this case the immediate, hazardous, concurrent approach toward the intersection of the Clifton car on the preferential road, at the time appellant entered the intersection. It is appellant's contention that the evidence in this case is conclusive that he had no such knowledge and that in the absence of such knowledge, the fact of. entering upon the preferential highway was an act of mere negligence, for which, under the guest statute, there is no

liability to a guest. Appellant cites the cases of *Hoesel* v. *Cain; Kahler* v. *Cain* (1944), 222 Ind. 330, 337, 338, 53 N. E. 2d 165; *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836 and *Becker* v. *Strater* (1947), 117 Ind. App. 504, 507, 72 N. E. 2d 580, as supporting this proposition. In fact, appellant refers to the latter case as being controlling of the issue before us.

It is true that, in the Becker case, *supra,* appellee entered upon a preferential highway without stopping and, it is true, that the decision in that case is supported by the following statement, relied upon by appellant:

> "There was nothing about appellee's conduct suggesting reckless abandon. He did not rush into the intersection knowing that other cars were approaching. All the evidence is to the effect that he had no knowledge of the approach of the automobile which struck him. He was not warned either by others or by his own senses."

However, the facts in the Becker case, *supra,* and the case before us are diametrically opposite as far as the decisive factor in the cases are concerned, namely, the *conscious* (wilful or wanton) *misconduct* of the driver. In the Becker case, supra, there was a total failure of proof that, before entering the intersection, the driver was *conscious* of a stop sign, or of a law requiring him to stop at the intersection. In fact, the evidence in that case was conclusive that the driver's attention was diverted away from the stop sign. Therefore, the court correctly concluded that, under the facts before it, failure of the driver to observe the stop sign would not support an action for wanton or wilful misconduct, and that the guest could recover only on proof that the driver, with "reckless abandon" did "rush into the intersection knowing that other cars were approaching," or that he had "knowledge of the approach of

the automobile which struck him." However, in the case at bar, the appellant consciously disregarded the stop sign, and the law, by reason of which it was established. Under these circumstances, it was not necessary for appellee to prove that, on entering the intersection, appellant was also consciously aware of an impending danger to his guest from any particular vehicle or vehicles on the preferential highway. Upon this issue, this court in the case of *Trent* v. *Rodgers* (1952), 123 Ind. App. 139, 104 N. E. 2d 759, 764, stated:

> "In order to hold the driver liable by reason of wilful and wanton misconduct, his knowledge of existing conditions and consciousness that from his act or omission injury will likely result to another, is not the knowledge of a particular fact or knowledge that a motor vehicle was approaching at such time and place, at such speed and so closely that it *could not pass* (emphasis of the court), but it is sufficient if such host driver have a consciousness of conditions obtained through the exercise of his senses and *knowledge of the likelihood of an injury to his guest as a result of his conscious acts."* (Our emphasis.)

The Supreme Court of this state has also made the following significant statement regarding the circumstances, under which the statute is held to be applicable:

> ". . . To have been guilty either of wilful or wanton misconduct he must have intentionally proceeded with knowledge of the peril or *his conduct must have shown a conscious indifference upon his part as to whether or not his act would cause injury. . . ."* (Our italics.) *Hoesel* v. *Cain, supra.*

In the light of the above authorities, it would seem that a fair statement of the law, applicable to the facts before us, would be that to be liable for wilful or wanton

misconduct under the guest statute, it was sufficient that appellant failed to stop before entering upon the intersection of the preferential highway, at which time he was conscious of the fact of the stop sign and that his conduct was in violation of the law and that, notwithstanding such knowledge, he proceeded to drive into the intersection with conscious indifference to the likelihood of resulting injury to his guest.

It is appellant's contention that there was no evidence of any knowledge on his part "of the likelihood of injury to the plaintiff." While it is true that appellant said he did not see the other automobile and did not know of its approach, still the jury was confronted with evidence that appellant was conscious of the fact that he entered a preferential highway at a time when traffic was particularly heavy, without looking to his right for approaching vehicles after he reached a point where looking would have been meaningful. There is also evidence that the driver of the other automobile honked his horn three times as he approached the intersection. There was, therefore, some evidence before the jury from which an inference could be drawn, (1) that the appellant entered the intersection with conscious indifference as to the likelihood of injury to his guest, or the jury may have concluded (appellant's statement was to the contrary) that he heard that which in the ordinary course of events men are presumed to hear, and (2) that he was warned and had knowledge of the approach of the other car, and that he drove into the intersection notwithstanding such knowledge. Evidence as to each of the above circumstances was sufficient to present a question of fact to the jury. This question the jury determined favorably to the appellee and this court, on appeal, is not at liberty to disturb its finding. *Pierce* v. *Clemens, supra.*

In regard to instruction numbered 3, we believe that it contained a proper statement of the law, as applied to the facts. It was not necessary that appellant actually *see* the other automobile involved in the collision. It was sufficient that he "intentionally disregarded" the stop sign and "drove and operated said automobile into said intersection *with knowledge of the likelihood of injury* to the plaintiff."

We will not discuss appellee's instruction 5, except to state that the error relied upon in this appeal is not grounded upon the objection asserted in the trial court. Therefore, no error is presented under Rule 1-7 of the Supreme Court. No error with respect to the giving of instructions shall be available on appeal, except on the specific objections made at the time. Flanagan, Wiltrout & Hamilton's Indiana Trial & Appellate Practice, §1506, p. 231.

Instructions 6, 7 and 8 are related to the measure of damages recoverable by appellee, if any. They are not mandatory instructions. We are not at liberty to consider either the specific objections to said instructions made to the trial court, nor the arguments relative thereto advanced in this appeal, for the reason that appellant has not urged, in either his brief or argument, that the damages awarded were in excess of those to which appellee was entitled. Appellant has waived any question as to said instructions. Rule 2-17, *Chicago, etc. R. Co.* v. *Brown* (1917), 66 Ind. App. 126, 115 N. E. 368; *Provident Life & Acc. Ins. Co.* v. *Fodder* (1935), 99 Ind. App. 556, 193 N. E. 698.

We proceed to consider appellant's tendered instructions 6, 7, 9 and 12, refused by the court. Instructions 6 and 9 involve some of the same issues and will be discussed concurrently. Instruction 6 was as follows:

"When the Legislature passed the guest law which I have read to you, it changed the law in this

state. Before the guest law was passed a person riding as a guest in an automobile could recover damages from the driver merely on proof of negligence. However, since the guest law was passed it is necessary before a guest can recover, to prove more than negligence. She must prove wilful and wanton misconduct as I shall define it in these instructions."

Instruction 9 was as follows:

"Even though you find that the accident was caused by negligence on the part of Mr. Rickner, still that would not be sufficient for the plaintiff to recover and your verdict should be for the defendant."

Appellant contends that refusal to give these instructions was reversible error for the reason that they properly stated the theory of his defense; that the substance of the instructions was not contained in any other instruction, and refusal to give them deprived him of his right to have the jury understand the theory of plaintiff's cause of action and that the defendant is entitled to instructions which adequately inform the jury as to the law relative to the theory of his defense. However, within such general rule, defendant is not entitled to an instruction which recites a history of the law upon which plaintiff's action is based, as was attempted in appellant's tendered instruction 6.

In this case, the fact of wanton or wilful misconduct is in issue. Appellant was, therefore, entitled to instructions which defined and distinguished such conduct from ordinary negligence. This rule has been stated as follows: "Where the questions of 'willfulness,' 'wantonness,' and 'recklessness' are in issue, those terms should be defined and distinguished from 'ordinary negligence'; . . ." 65 C. J. S., §289 c., p. 1239; *Coconower* v. *Stoddard* (1932), 96 Ind. App.

287, 182 N. E. 466; *Armstrong* v. *Binzer* (1936), 102 Ind. App. 497, 199 N. E. 863. However, an examination of tendered instructions 6 and 9 discloses that they contain no such definition or distinction of terms but merely instruct the jury that "it is necessary before a guest can recover, to prove more than negligence," and "even though you find that the accident was caused by negligence your verdict should be for the defendant." The instructions did not serve to define and distinguish between "wilful or wanton misconduct" on the one hand and "negligence" on the other and thus clarify the issues before the jury. Rather, the instructions might well have caused confusion or have misled the jury. Although our courts have clearly stated that, "Between ordinary negligence and wilfulness there is no middle ground," (*Hoesel* v. *Cain; Kahler* v. *Cain, supra*), still it is a fact that, in common parlance, "Wilful and wanton misconduct" are considered a kind of "negligence" and are so treated under the title of "Negligence" in our most reputable texts. 65 C. J. S., §9, Negligence, p. 374; 38 Am. Jur. Negligence, §48, p. 692. Also, many courts and authorities have used the terms "wilful and wanton misconduct" and "wilful negligence" as being synonymous. As stated in 65 C. J. S., *supra*, §9, pp. 376 and 377: ". . . 'Willful *negligence*' . . . has come to have a well understood significance in the law; . . . as indicating a voluntary breach of duty under such circumstances as indicate a reckless or wanton disregard of consequences. . . ." (Our italics.)

Because of the fact that the term "negligence" is generally, if loosely, used to describe numerous kinds of misconduct, including wilfulness and wantonness, it was improper for the court to instruct the jury that appellee could not recover on proof "that the accident was caused by negligence," without further defining the term and distinguishing its appli-

cation under the facts before us. This, the instructions did not do.

Appellant's Instruction 7, refused by the court, was as follows:

"If you find that when defendant approached the Hesse Cassel Road he slowed down and shifted gears and knew that he was approaching a stop road, that he looked both ways and saw no traffic approaching on the through highway and did not know that a car was approaching on the through highway, then under those circumstances I instruct you that defendant was not guilty of wanton or wilful misconduct."

The instruction is mandatory in that it would deny recovery to appellee in event appellant, when approaching the road, "slowed down and shifted gears . . . looked both ways and saw no traffic approaching . . . and did not know that a car was approaching . . ." The instruction is bad in the first particular because there is no evidence that appellant "slowed down and shifted gears." Furthermore, the instruction does not fix the time or place at which appellant "looked both ways and saw no traffic approaching."

As heretofore stated, the fact is that appellant did not look a second time after he was approximately 156 feet from the center of the intersection, although his view to the right was so obstructed that there was likelihood that cars approaching from that direction at ordinary speeds would reach the intersection concurrently with appellant. The instruction does not exclude the possibility that appellant may have "looked both ways" when such looking was meaningless. Therefore, his lack of actual knowledge that a "car was approaching . . . on a through highway," was not controlling. The instruction erroneously excludes the possibility of

recovery upon proof that appellant wantonly and wilfully failed to observe the stop sign and thereafter proceeded to enter upon the intersection with reckless disregard or conscious indifference to the fact that he was committing a wrong, as a result from which, there was likelihood of injury to his guest.

Finally, appellant's Instruction 12, refused by the court, was as follows:

"Assumption of risk is a defense in a guest case. If you find from the evidence that the plaintiff voluntarily rode in defendant's car and assumed the risk of riding with the defendant then the plaintiff cannot recover and your verdict should be for the defendant."

This instruction was properly refused because there was no evidence that appellee voluntarily exposed herself to any known or appreciated danger, due to the wanton or wilful misconduct of appellant, by reason of which she sustained injury. See 65 C. J. S., Negligence, *supra*, §174, p. 849.

Judgment affirmed.

NOTE.—Reported in 116 N. E. 2d 525.